# 🜲irhmmond.

## L. P. CLAYTOR v. COMMONWEALTH.

### November 16, 1922.

LARCENY—*New Trial—Evidence Sufficient to Support Verdict—Case at Bar.*— In the instant case defendant was convicted of the larceny of certain automobile tires from a store. The *corpus delicti* of the theft was proven beyond all doubt. Accused's companion was so drunk that he was incapable of taking the tires from the store at the time they were taken. It appeared from the evidence that a policeman upon · whom suspicion attached could not have actually taken the tires from the store. Accused was the only person to whom the evidence pointed as having done the actual taking, and he said, according to the evidence for the Commonwealth, on the night of the taking, "Well, I had the tires in here more than ten minutes before I could find" his drunken companion.

   *Held:* That the jury were warranted by this statement when considered along with the circumstantial evidence, in finding the accused guilty. Moreover, there was other incriminating evidence.

Error to a judgment of the Circuit Court of Augusta county.

*Affirmed.*

The verdict of the jury found the accused guilty of grand larceny as charged in the indictment and fixed his punishment at three years in the penitentiary and the judgment under review was entered accordingly.

The only assignment of error is that the trial court erred in refusing to set aside the verdict on the ground that it is plainly wrong, because without sufficient evidence to support it.

The accused was charged with stealing twenty-six automobile tires from the Fitch store in Waynesboro. The theft occurred in the night time and no witness tes-

tified to seeing the theft committed. The tires were Mason tires and had on them certain factory numbers. Their value was proved to be $650.00. The testimony shows, without conflict, that the accused was in the Fitch store the day before the theft, about noon, and was shown some tires, but did not buy any. On the day after the theft the accused, in his automobile, was in Waynesboro and the officers who were on the look-out for the stolen tires saw that four of the tires were on the accused's automobile, with the factory numbers "scratched out." A week or more afterwards the accused came again to Waynesboro and left his car standing on the street, when it was again examined by the officers who found that the Mason tires had been removed from the car. The accused was thereafter arrested and asked about the Mason tires that had been on his car and he denied that he had ever had any of that kind of tire on the car. One of the officers insisted, however, on having seen the Mason tires on the car and told the accused that he might as well admit it, as there were two or three witnesses who would testify to the fact. The accused was taken to the Commonwealth attorney's office and he denied ever having had any of the stolen tires on his car. The next day, however, the accused came to the Commonwealth attorney's office and stated that he could show where the tires were; and, as a result of the information given by the accused, all of the stolen tires were located and recovered. The accused later stated that he was sorry that he did not acknowledge when he was arrested that he had had on his car some of the stolen tires, but did not explain the erasure of the factory numbers from the tires or why he removed them from the car.

There was further evidence before the jury to the effect that the accused came from Staunton through

Waynesboro to Basic in his car, on the night of the theft, with one Fretwell, a friend of his, and two girls, the latter going along at the request of the accused for a joy-ride.  That both the accused and Fretwell were drinking, the latter showing the effects of it more than the former.  That on their return from Basic the girls insisted on being put out of the car at the depot in Waynesboro, hoping to get home to Staunton by some other means, rather than go with their drunken companions.  That accordingly the accused, who was driving the car, stopped it on a street a short distance from the depot at Waynesboro, but out of sight of the depot, and went with the girls to the station, leaving Fretwell in the car, too drunk at that time to be able to walk, according to the testimony.  That on arriving at the depot, after he had talked privately with a policeman found standing there, the accused said that he thought he had better go and see what had become of Fretwell and the car.  That thereupon the accused went off, leaving the girls with the policeman.  That he was gone some time, about an hour, one of the girls testified, and she also testified that he came back with the car, driving it up to the depot, with the back seat filled up with the tires, which afterwards proved to be the stolen tires, and with Fretwell sitting on the back of the front seat, and with his body bending over on top of the tires.  That as the accused drove up to the depot with the tires in the car, he said:  "Well I had the tires in here more than ten minutes before I could find Fretwell."  That the accused then had another private talk with the policeman.  That having no money, the girls then decided to risk the return home in the car of the accused and got in the front seat of the car while the accused was having his second talk with the policeman.  That the accused asked Fretwell to drive the car "over the

hill'' while the accused was talking with the policeman the second time, but that Fretwell was still too drunk to be able to do anything.   That ''Fretwell was then just as drunk as ever.''   That the accused ''had been drinking but seemed to stand it better than Fretwell.'' That the accused came in a few minutes and got in the car and drove it on towards Staunton, with Fretwell, the girls and the tires in the car.   That on the way to Staunton, the accused stopped the car at Peyton's Lane and asked the girls to get out, which they did, walking on towards Staunton.   That in about twenty minutes the accused overtook them in his car and took them up and carried them on to Staunton.

The accused in his testimony admits that he had the tires in his car on the night of the theft, and stated that when he stopped at Peyton's Lane he did so in order to put the tires in a place of concealment.   He says on this subject that he turned down the lane, after the girls got out of the car, and ''took the tires down to an old spring house.''   That he ''had looked into the spring house one day, and asked them why they didn't use it, and they said, because it was full of snakes, so I (the accused) thought it would be a good place to put the tires.''

The accused's account of how he came to have the stolen tires in his car on the night of the theft is, that when he left the girls at the depot to go and look for Fretwell and his car he did not find the car where he had left it, but, after some search, found the car in the alley by the side of the Fitch store, with Fretwell in it ''lying up on the front seat.''   That ''all the back part of the car was piled up with tires.''   That he shook Fretwell, and asked him what he was doing with all those tires in the car?''   That he ''couldn't get a thing out of him, though, all he would say was 'Let's get out

of here.'    That he (the accused) got into the car and drove up to the depot."    That he stopped the car there, and told the policeman that he had "found Fretwell with the car full of tires."    That the policeman said, "That's all right, you get out of town, and Fretwell and I will fix it up later."    That accordingly he drove on to Staunton, stopping on the way to conceal the tires, as aforesaid.

Fretwell testifies that he was so drunk that he couldn't remember anything that occurred while in Waynesboro on the night of the theft; but that he knew he didn't get the tires because he had never done such a thing as that in his life and that he didn't believe anyone could make him do it, not even while drunk; that he didn't think anybody could make him steal anything.

It developed in evidence that the next morning following the theft the aforesaid policeman stated to the chief of police of Waynesboro that he didn't see how anyone could have gotten those tires as he was up and down that street all night; and denied that he had seen the accused that night.    If further developed in evidence, however, that the accused heard of this denial and went to see the policeman, in the presence of the chief of police, and that the policeman again denied seeing the accused that night, but on the accused saying to him, "Now, Kibler, there is no use denying it, you know you saw me, and talked to me for several minutes there at the depot," the policeman admitted it, and so testified on the trial, and gave in explanation of his first denials of having seen the accused that night that he was afraid to tell this because he thought the accused "would get even" with him.

It was further developed in evidence that the aforesaid policeman was suspected of having a part in the

theft; also that on the night of the theft he carried in his pocket, as a part of his official outfit, a skeleton key, which would have unlocked the door of the Fitch store; and that there was no evidence found that the store had been broken into, the appearance being that the store had been unlocked by some one.and the tires thus removed. But that when the accused was arrested the officer suggested to him that the aforesaid policeman might be mixed up in the trouble, the accused emphatically stated that the policeman was innocent and that he (the accused) didn't want to see the policeman "mixed up in it."

*Curry & Curry, Timberlake & Nelson* and *J. A. Alexander*, for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The sole question involved in this case is the following:

1. Was there sufficient evidence before the jury to support the verdict finding the accused guilty of the larceny of the automobile tires?

The question must be answered in the affirmative.

The *corpus delicti*, the theft, was proven beyond all doubt. The only question in the case is whether the evidence warranted the jury in concluding that the accused, beyond all reasonable doubt, took the tires from the Fitch store and put them in his automobile on the night of the theft, or whether some one else did this.

The following evidence, not to mention other incriminating circumstances, was amply sufficient to warrant the jury in finding that the accused personally took the tires from the store and placed them in his automobile on the night of the theft:

According to the testimony for the Commonwealth, Fretwell was so drunk that he was physically incapable of taking the tires from the store at the time they were taken; the policeman was with the two girls at the depot at that time, so that he could not have been the person who actually took the tires from the store. The accused is the only person to whom the evidence points as having done the actual taking, and when he drove his car up to the depot with the tires in it, he said, according to the evidence for the Commonwealth, "Well, I had the tires in here more than ten minutes before I could find Fretwell." The jury were warranted by this statement, when considered along with the circumstantial evidence, in finding the accused guilty. This statement being true, it was evident to the jury that the testimony of the accused giving a different account of how the tires came into his possession was false. Further, the accused had four of the stolen tires on his automobile the morning after the theft, with the factory numbers on them erased. He subsequently removed those tires from the automobile, and denied that he ever had them on it. It is needless to refer any further to the evidence in detail.

Even if it were true that the policeman furnished the accused with the key with which he unlocked the store, thus enabling the accused to enter it and take the tires, making the policeman an accomplice in the crime, that did not lessen the guilt of the accused.

The case will be affirmed.

*Affirmed.*